IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MICHAEL C. DIXON,**

  **Plaintiff,**

  v.

            **Civil Action 2:13-cv-361**
            **Judge Michael H. Watson**
            **Magistrate Judge Elizabeth P. Deavers**

**CAROLYN W. COLVIN,**
**COMMISSIONER OF SOCIAL**
**SECURITY,**

  **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Michael C. Dixon, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits and supplemental security income. This matter is before the United State Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Specific Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 13), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Specific Errors and **AFFIRM** the Commissioner's decision.

### I.  BACKGROUND

**A. Procedural Background**

This matter involves Plaintiff's second application for disability benefits. Plaintiff initially filed for disability insurance benefits and supplemental security income on August 17, 2004, alleging that he became disabled on February 29, 2004, at age 27. (R. at 75.) After

Plaintiff's initial application and request for reconsideration were denied, he requested a *de novo* hearing before an administrative law judge. (*Id.*) Administrative Law Judge Thomas P. Piliero ("ALJ Piliero") held an evidentiary hearing and denied Plaintiff's applications on October 17, 2008 ("the first determination"). (R. at 75–83.)

Plaintiff filed new applications for both disability insurance benefits and supplemental security income on September 17, 2008, alleging that he became disabled on April 9, 2008, at age 31. (R. at 22.) After Plaintiff's second application was denied initially and upon reconsideration, he requested a *de novo* hearing before an administrative law judge. (*Id.*) Administrative Law Judge Valencia Jarvis ("ALJ Jarvis") held a video hearing on July 27, 2011. Plaintiff, represented by counsel, appeared and testified. (R. at 42–64.) Michael A. Klein, a vocational expert, also appeared and testified. (R. at 65–70.) On October 28, 2011, ALJ Jarvis issued a decision that Plaintiff was not disabled. (R. at 22–31.) The Appeals Court declined to review that decision. (R. at 1.) Plaintiff timely commenced this action.

**B.     Relevant Hearing Testimony**

At the July 27, 2011 hearing, Plaintiff testified that he lives with his girlfriend and one of his three dependent children. (R. at 47, 49.) Plaintiff told ALJ Jarvis that his biggest problem is his mental health issues. (R. at 51.) Plaintiff described problems with mood swings, memory, and concentration. (*Id.*) He testified that he has trouble "following" when reading and watching television and movies, and that he has problems completing projects. (R. at 51–52.) He also described having low energy levels that cause him to take three naps a day that last one or two hours. (R. at 52.) Plaintiff stated that he sometimes does not hear what people say correctly and that he sometimes hears garbled voices when no one else is present. (R. at 53.) He also

described experiencing visual disturbances, like seeing shadows out of the corner of his eyes. (*Id.*) He admitted to having suicidal thoughts. (R. at 53–54.)

Plaintiff testified that he weighed around 590 pounds at the time of the hearing, which reflected a 30 pound weight gain over the prior twelve months. (R. at 47.) He attributed his weight gain to pain, his mental state, and not wanting to go outside. (*Id.*) At one point during the hearing, Plaintiff stood up because the prolonged sitting was uncomfortable for his knees and back. (R. at 54.) He stated that he regularly had pain in his back and numbness in his thighs. (*Id.*) Both of his hips and knees hurt but he had more pain in the left knee than the right. (R. at 54–55.) According to Plaintiff, cortisone injections in both knees were not helpful. (R. at 55.) He reported that he could only stand or sit in a chair for ten to fifteen minutes, and could only walk half a block before needing to stop and take a break. (R. at 56.) He indicated that he could only lift half a gallon of milk. (*Id.*)

Plaintiff stated that he had migraines about once a week, for which he takes Imitrex, but the medication makes him feel "drunk and sleepy." (*Id.*) According to Plaintiff, his other medications, Celexa, Abilify, and Adderall, give him dry mouth and make him feel "numb and spacey." (*Id.*)

Plaintiff stated that he had no driving restrictions but tried to drive as infrequently as possible. He generally drove on a daily basis to the store and to doctor's appointments. (R. at 48.) Plaintiff also stated that when he drove to the store, he went with someone else and waited outside while they went in because he did not like being around other people. (*Id.*) Plaintiff reported that he does not do his own housework and that a friend does that for him. (R. at 55–56.)

Plaintiff testified that he cares for his one-year-old daughter while his girlfriend works. (R. at 57.) According to Plaintiff, he wakes his daughter at 9:00 a.m., feeds her, and lets her play. His mother comes over daily to help with his daughter. (R. at 58.) Plaintiff indicated that he plays with his daughter and watches cartoons with her. (R. at 59.) He also changes her diaper and gives her a bath in the sink, but can generally not stand for the entire bath. Plaintiff noted that his daughter weighs about seventeen pounds. (R. at 62.)

Dr. Michael Klein testified as the vocational expert ("VE") at the administrative hearing. (R. at 65-70.) The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity to the VE. Based on a hypothetical that mirrored the limitations the ALJ set forth in his RFC formulation and applied to an individual of Plaintiff's age, education, and work experience, the VE testified that the individual could not perform Plaintiff's past relevant work, but would likely be able to perform a number of jobs, including sedentary order clerk, with 15,000 state jobs and 300,000 nationwide; sedentary bench assembly with 15,000 state jobs and 400,000 nationwide; and optical lens inserter, with 10,000 state jobs and 250,000 nationwide. The VE further testified that if the individual was off task 11-25% of the workday or workweek, he would not be able to work competitively. (R. at 70.)

**C.     Relevant Medical Records**

    **1.     Physical**

Plaintiff complained of knee pain in November 2006 and underwent an x-ray of both knees. (R. at 313.) He was diagnosed with mild hypertrophic degenerative arthritis in his left knee. (R. at 313-314.) Plaintiff received corticosteroid injections in his left knee in October 2007. (R. at 278.) He tolerated the injection well.

In January 2007, Plaintiff underwent an ultrasound which revealed cholelithiasis. (R. at 306.) As a result, he underwent a surgery to remove his gallbladder in April 2007. Plaintiff had no post-operative problems. (R. at 297.) He reported that his pre-operative pain was resolved following the surgery. (*Id.*)

On June 11, 2007, Cart Switzer, P.T., completed a functional capacity evaluation report. He found that Plaintiff had a normal range of motion in his upper and lower extremities, but was limited in trunk range. (R. at 287.) Similarly, Plaintiff demonstrated normal strength in his upper and lower extremities, but weakness in his trunk. (*Id.*) He had normal balance and was able to walk for approximately ten minute intervals. (R. at 288.) He was able to sit for thirty to forty minute intervals with no discomfort, and could stand for fifteen minute intervals. (*Id.*) He was able to lift thirty-two pounds and carry twenty-five pounds a distance of thirty feet. Plaintiff reported "independence with all activities of daily living." (R. at 287.) Mr. Switzer opined that Plaintiff was suited for a sedentary position. (R. at 292.)

In December 2007, Plaintiff presented to the Hocking Valley Community Hospital with complaints of back pain. (R. at 277.) Although the examination was limited, it revealed no fracture, subluxation, or dislocation.

On January 6, 2008, Maria Congbalay, M.D., reviewed Plaintiff's medical records on behalf of the state disability determination service. (R. at 347-354.) In her assessment, Dr. Congbalay concluded that Plaintiff could walk or stand for thirty minutes at a time for no more than two hours, could occasionally lift and carry twenty pounds, and could frequently carry ten pounds. She concluded that Plaintiff could sit for about six hours in an eight hour work day, but noted that he must periodically alternate sitting and standing to alleviate pain. (R. at 348.) Dr.

Congbalay adopted ALJ Pilerio's RFC dated May 12, 2008. Arthur Sagone, M.D., affirmed Dr. Congbalay's conclusions on February 24, 2010. (R. at 394.)

Plaintiff saw John Miller, C.R.N.P. on a consistent basis. On June 19, 2009, Mr. Miller indicated that Plaintiff was not able to return to work due to his morbid obesity. (R. at 376.) He diagnosed Plaintiff with hypertension, osteoarthritis, and obesity. (R. at 378.) In 2010, Mr. Miller opined that Plaintiff was able to lift up to ten pounds frequently. He indicated that Plaintiff could stand up to sixty minutes and stand or walk up to ten minutes during an eight hour work day. Mr. Miller opined that Plaintiff could sit four hours during a workday, but only for two hours uninterrupted. (R. at 433.)

### 2. Psychological

Plaintiff has seen Dr. Haque once per month for treatment since 2004. (R. at 325.) Dr. Haque initially diagnosed Plaintiff with bipolar disorder and adult Attention Deficit Disorder ("ADD"). (R. at 356.) In 2007, Dr. Haque indicated that Plaintiff has severe anxiety and panic attacks along with poor concentration and attention. (R. at 355.) He opined that Plaintiff was impaired in his interpersonal relationships with coworkers. He indicated that, since the beginning of 2005, Plaintiff's symptoms have been moderately severe and did not fully respond to treatment. (R. at 355-56.) By 2009, however, Dr. Haque's treatment notes indicated that Plaintiff was "doing well" and that his anxiety was under control. (R. at 371.)

Plaintiff was seen by Marc Miller, Ph.D., on December 9, 2008, at the request of the Bureau of Disability Determination. (R. at 324.) Plaintiff indicated that he had difficulty with social anxiety and depression. Dr. Miller noted that Plaintiff drove to the examination site and was "cooperative, friendly, and mannerly." (R. at 325.) He indicated that Plaintiff's conversation was goal oriented and intelligible. Dr. Miller noted that Plaintiff reported that his

6

energy levels are fair. He found that Plaintiff was alert and oriented and placed his intellect in the "low average range." (R. at 326.) Dr. Miller found no impairment with carrying out one and two step job instructions, but found a marked impairment on his ability to interact with co-workers and supervisors based on Plaintiff's self-reports of social anxiety. (R. at 326.) He found mild to moderate impairment of Plaintiff's ability to maintain attention span and moderate impairment in Plaintiff's ability to deal with stress. Dr. Miller assigned Plaintiff with a Global Assessment of Functioning ("GAF") score of 55-60.[1] (R. at 327.)

On December 19, 2008, David Dietz, Ph.D., reviewed Plaintiff's psychological records on behalf of the state disability determination service. (R. at 329-346.) Dr. Dietz found impairments of dysthymic disorder and social anxiety. (R. at 332, 334.) In his assessment, Dr. Dietz indicated that Plaintiff was cooperative and friendly. He concluded that Plaintiff's ability to understand and carry out simple tasks was not impaired. Dr. Dietz opined that Plaintiff's ability to relate to others, however, was impaired. (R. at 345.) He posited that Plaintiff could perform one to three step work tasks in an environment without strict production demands. Dr. Dietz also noted that Plaintiff could adapt to minor changes in the workplace. On January 25, 2010, Paul Tangeman, Ph.D., affirmed Dr. Dietz's mental residual functional capacity in its entirety. (R. at 393.)

---

[1] The GAF scale is used to report a clinician's judgment of an individual's overall level of functioning. Clinicians select a specific GAF score within the ten-point range by evaluating whether the individual is functioning at the higher or lower end of the range. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33–34 (American Psychiatric Association, 4th ed. text rev. 2000) (DSM-IV-TR). A GAF score of 51-60 is indicative of moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM-IV-TR at 34.

## II. THE ADMINISTRATIVE DECISION

On October 28, 2011 ALJ Jarvis issued her decision. (R. at 22-34.) At step one of the sequential evaluation process,[2] ALJ Jarvis found that Plaintiff had not engaged in substantially gainful activity since April 9, 2008. (R. at 25.) ALJ Jarvis found that Plaintiff had severe impairments of degenerative disc disease, bilateral-mild degenerative joint disease or arthritis of the knees, morbid obesity, anxiety, and depression. (*Id.*) ALJ Jarvis further noted that Plaintiff's headaches, hypertension, and alleged bipolar disorder were not severe impairments (R. at 26.) She found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 26.) At step four of the sequential process, ALJ Jarvis evaluated Plaintiff's RFC. ALJ Jarvis found as follows with regard to Plaintiff's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant can sit for a total of up to six hours of an eight-hour work day in one hour

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> increments; can stand and walk for up to two hours of an eight-hour work day in thirty minute increments; has a sit/stand option that may be exercised at will; can lift up to twenty pounds frequently; can only occasionally bend or climb stairs; cannot crouch, squat, crawl, or use ladders, ropes, or scaffolds; cannot work at unprotected heights or around moving machinery; can perform only simple work tasks; can make only simple work-related decisions; and must work in a relatively static work environment.

(R. at 28-29.) In reaching this RFC determination, ALJ Jarvis gave the greatest weight to the RFC assessments from State examiners Drs. Congbalay, Sagone, Dietz, and Tangeman. (R. at 30.) ALJ Jarvis assigned "little weight" to the opinions of Dr. Haque and Mr. Miller. (*Id*.)

Relying on the VE's testimony, ALJ Jarvis determined that even though Plaintiff was unable to perform his past relevant work, he was able to perform jobs that exist in significant numbers in the state and national economy. (R. at 32-33.) She therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 33.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must

"'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.   ANALYSIS

Plaintiff raises two broad challenges to the ALJ's decision. Plaintiff first asserts that the ALJ erred in her determination that a person with Plaintiff's RFC limitations would be able to work. Specifically, Plaintiff emphasizes that the VE testified to work-preclusive limitations associated with Plaintiff's mental RFC. Plaintiff contends that the ALJ did not include the appropriate mental limitations in the RFC such that substantial evidence does not support the determination that there were jobs in the economy someone with Plaintiff's residual functional capacity could perform. Plaintiff next challenges the ALJ's weighing of medical opinion evidence. Plaintiff posits that the ALJ violated the treating physician rule by neglecting to afford Dr. Haque's opinions controlling weight. Further, Plaintiff asserts that the ALJ failed to meaningfully examine Mr. Miller's opinion under Social Security Ruling 06-3p. The Court will consider each of Plaintiff's objections in turn.

**A.  RFC Limitation**

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of RFC is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e).  Nevertheless, substantial evidence must support the Commissioner's RFC finding.  *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).  When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'"  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Plaintiff asserts that ALJ Jarvis erred because the mental limitations included in Plaintiff's RFC would be work preclusive. (R. at 29.) Specifically, Plaintiff points to the VE's testimony that Plaintiff would require accommodated employment if he was restricted to working with "few, if any, workplace changes." (R. 67-68.) Instead of including that specific limitation, ALJ Jarvis limited Plaintiff to work in a "*relatively static* work environment." (R. at 29.)

The Undersigned concludes that substantial evidence supports the mental limitations in Plaintiff's RFC. First, limiting Plaintiff to a "relatively static work environment" is not the same as a limitation that there be "few, if any, changes." *See, e.g., Richards v. Comm'r of Soc. Sec.*, No. 2:12-cv-748, 2013 WL 3984447, at *2 (S.D. Ohio Aug. 1, 2013) report and recommendation adopted in *Richards v. Colvin*, 2:12-CV-748, 2013 WL 5487045 (S.D. Ohio Sept. 30, 2013) (noting that "relatively static duties" does not mean "totally unchangeable."); *Wright v. Comm'r of Soc. Sec.*, No. 1:13CV1103, 2013 WL 3873947, at *16 (N.D. Ohio July 25, 2013) (noting that "relatively static duties" would include changes from day to day.).

Furthermore, substantial evidence supports ALJ's reliance on the VE's testimony that a significant number of jobs exist in the local and national economy for an individual with Plaintiff's RFC. "In order for a VE's testimony to constitute substantial evidence that a significant number of jobs exists, the questions must accurately portray a claimant's physical and mental impairments." *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011). Here, the ALJ's hypothetical questions incorporated all of the limitations the ALJ found credible and supported by evidence and, therefore, was proper. Moreover, substantial evidence supports the RFC adopted by ALJ Jarvis. She afforded great weight to the opinion of State Agency reviewer Dr. Dietz, who opined that Plaintiff "can adapt to minor changes in the workplace." (R. at 345.) The

VE testified that, absent the restriction of "few, if any, workplace changes," there were a significant number of jobs in the local and national economy that Plaintiff could perform. (R. at 68.) Accordingly, the ALJ did not err in relying on the VE's testimony and substantial evidence supports her decision in this regard.

**B.     Weight of the Medical Opinion Evidence**

    **1.     Dr. Haque and the Treating Physician Rule**

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(d). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

13

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

The Court finds that the ALJ complied with the necessary procedural requirements in determining how much weight to assign to Dr. Haque's opinion. The ALJ provided the following explanation for assigning little weight to Dr. Haque's opinion:

> Dr. Haque[] initially diagnosed the clamant['s] bipolar disorder and adult attention deficit disorder ("ADD"), later changing to the more credible diagnoses of adult ADD and depressive disorder. Dr. Haque also originally stated the claimant suffered from severe anxiety and panic attacks, auditory and visual hallucinations, and delusions, concluding that the claimant could not complete reading materials or tasks and had poor concentration[]. When the claimant began attending community college classes, Dr. Haque changed his diagnosis to slight memory problems, no daily living impairments, and noted the claimant had missed school due to panic attacks. Dr. Haque provided a series of checkmarks on a form without sufficient explanation, indicating the claimant could perform simple tasks, had marked social impairments, and that the claimant's physical and functional limitations were not expected to last over nine months. While some of Dr. Haque's findings are supported by the findings of the State medical examiners and the evidence of record, the inconsistency among Dr. Haque's findings and statement that the claimant's physical and mental impairments are all non-severe impairments do not merit giving Dr. Haque's opinions significant weight.

(R. at 31-32) (internal citations omitted).

Substantial evidence supports ALJ Jarvis' evaluation of and the weight assigned to Dr. Haque's opinion. First, as noted above, ALJ Jarvis provided good reasons for discounting Dr. Haque's opinion as inconsistent with the record as a whole. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (concluding that the ALJ met the "good reasons" requirement for a variety of reasons, including by noting that the treating physician's findings were "unsupported by objective medical findings and inconsistent with the record as a whole."); *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 193 (6th Cir. 2009) (concluding that the ALJ met the good reason requirement by noting that the opinion was inconsistent with the physician's treatment notes and with the record evidence). ALJ Jarvis supported her conclusion by pointing to inconsistencies within Dr. Haque's own treatment notes and diagnoses. For example, Dr. Haque initially opined that Plaintiff suffered from severe anxiety, panic attacks, and could not

15

complete reading materials or tasks.  When Plaintiff began attending community college, however, Dr. Haque changed his diagnosis to indicate that Plaintiff had no daily living impairments.

Finally, to the extent Plaintiff objects to the weight ALJ Jarvis afforded to Dr. Haque's assessment that Plaintiff was "disabled from his symptoms to where he is  unable to engage in any work related activities," that challenge is misplaced.  (R. at 410.)  The degree to which an individual is capable of performing work is an issue reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(d)(1) ("[The Commissioner] is responsible for making the determination or decision about whether [the claimant] meets the statutory definition of disability. . . .   A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the ALJ] will determine that you are disabled."); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (holding that the ALJ properly rejected a treating physician's opinion that the claimant was disabled because such a determination was reserved to the Commissioner.).

### 2. Mr. Miller – Nurse Practitioner

The treating physician rule does not apply to the medical opinions of nurse practitioners. *See* 20 C.F.R. §§ 404.1513(d)(1), 404.1527(a)(2); *Titles II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernmental Agencies*, SSR 06-03P (S.S.A Aug. 9, 2006) (stating that nurse practitioners are not acceptable medical sources). The ALJ was therefore required to consider Mr. Miller's opinion, but was not compelled to afford it substantial weight.  *Beaty v. Comm'r of Soc. Sec.*, 2012 WL 3779700, at *13 (6th Cir. Aug. 3, 2012) (concluding that, under SSR 06-03P, the ALJ is required to consider the opinion of a nurse practitioner, which is "not a demanding standard.").

In the instant case, the ALJ properly considered Mr. Miller's opinion. First, the ALJ properly discounted Mr. Miller's opinion that Plaintiff could not work due to his disability. "'[T]he determination of disability is the prerogative of the Secretary, not the treating physician.'" *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). Because the determination of disability is reserved to the Commissioner, the ALJ "will not give any special significance to the source of an opinion" on that issue. 20 C.F.R. §§ 404.1527(d)(1)-(3) and 416.927(d)(3); *see also Bass v. McMahon*, 499 F.3d at 511 (explaining that the conclusion of disability is reserved to the secretary"); *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 804 (6th Cir. 2008) (concluding that a physician's disability determination was a decision reserved for the Commissioner and therefore not entitled to any special significance). The ALJ next concluded that Mr. Miller's opinions "overstate the extent of the claimant's physical and mental limitations based on the medical opinions, the claimant's daily living activities, and the evidence of record." The ALJ therefore did not err in discounting the value of Mr. Miller's opinion and gave good reasons for affording it little weight.

   **3. Substantial Evidence Supports the ALJ's Conclusions**

Substantial evidence supports the ALJ's proffered reasons for affording less weight to the opinions of Plaintiff's treating physician and nurse practitioner, as well as her decision that Plaintiff is not disabled for the purposes of the Social Security Act. As the ALJ pointed out, Dr. Haque's notes were internally inconsistent, did not provide sufficient explanation, and not supported by objective medical findings. The ALJ addressed Dr. Haque's note that Plaintiff had no daily living impairments and that his limitations were not expected to last over nine months. (R. at 31.) She emphasized Plaintiff's ability to interact with others and care for an infant. Similarly, the ALJ noted that Mr. Miller's assessments of Plaintiff's physical capabilities varied

and largely overstated Plaintiff's limitations. She pointed out Mr. Switzer's finding that Plaintiff had a normal range of motion and Plaintiff's self-reports that he was independent in his areas of daily living. (R. at 287-288.)  Accordingly, the Court concludes that the ALJ did not err in failing to afford greater deference to the opinions of Dr. Haque and Mr. Miller.

## V. CONCLUSION

From a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that Plaintiff's Statement of Specific Errors be **OVERRULED** and that the Commissioner of Social Security's decision be **AFFIRMED**.

## VI. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date: July 17, 2014                             /s/ *Elizabeth A. Preston Deavers*
                                                Elizabeth A. Preston Deavers
                                                United States Magistrate Judge